# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

CLERK USDC EDWI
FILED

2022 M... 28 A II: 35

|  |  |
|---|---|
| ROBERT J. HUTCHINSON, | ) Case No. _____ CV _____ |
|  | ) |
|  | ) COMPLAINT: **22-C-0382** |
| *Plaintiff,* | ) |
|  | ) 42 U.S.C. § 1983: FOURTH, FIFTH, NINTH |
| v. | ) AND FOURTEENTH AMEMDMENTS; |
|  | ) |
| JEFFREY KELLING | ) WISCONSIN CONSTITUTION: |
|  | ) ARTICLE I, §§ 1, 11 |
|  | ) |
| *Defendant.* | ) 18 U.S.C. 1964: ASSOCIATED WITH |
|  | ) 18 U.S.C. 1961, 1962, 1965 AND 1966; |
|  | ) COMMON LAW TORT CLAIMS |

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues so triable.

Plaintiff, Robert J. Hutchinson, represented *pro se,* brings this Complaint and alleges:

**JURISDICTION AND VENUE**

1.      This is an action for damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the causes of action arise under the Constitution and laws of the United States.

1

2, Jurisdiction is conferred on this Court by Federal Rules of Civil Procedure Rule 66 (See Notes of Advisory Committee on Rules - 1946 Amendment), Federal Rules of Civil Procedure Rule 17(b), 28 U.S.C. § 754, and 28 U.S.C. § 959(a)).

3. Venue is proper in the Eastern District of Wisconsin in that the events and conduct complained of herein all occurred in the Eastern District.

## INTRODUCTION

4. The purpose of this lawsuit is to recover personal damages that accrued to Plaintiff as a direct result of Defendant Kelling's fraudulent conversion of a quarter-million dollar asset in a receivership proceeding.

5. Said quarter-million dollar asset – a Tescan scanning electron microscope with energy dispersive x-ray spectrometer ("SEM" hereafter) - disappeared from the receivership inventory of assets without record.

6. Defendant Kelling was appointed Receiver to Plaintiff's corporation, Metallurgical Associates, Inc. ("MAI"), under Wisconsin's receivership statute, Wisconsin Chapter 128.

7. Defendant Kelling did not file any motion, petition, or report with the receivership court addressing the disposition of the SEM or even referencing its existence. The SEM does not appear in any filing with the court.

8. No order or judgment of the receivership court addresses the disposition of the SEM or even refers to its existence. The SEM does not appear anywhere in the court record.

2

9. *"The chapter 128 receiver* [in this case Defendant Kelling], *typically takes control of the business* [the debtor] *and assets."* (*Chapter 128: A Change Will Do Us Good,* Hon. Catherine J. Furay; Wisconsin Lawyer Vol. 95, No.3).[1] Defendant Kelling had such control.

10. "[W]*ithin 10 days after the appointment of a receiver, the debtor* [MAI, which was then controlled by Defendant Kelling] *shall file with the clerk of circuit court a correct inventory of the debtor's assets"*. Wis. Ch. 128.13.

11. Plaintiff provided Defendant Kelling with a spreadsheet itemizing all MAI assets including the SEM. Plaintiff provided an affidavit certifying the asset spreadsheet.

12. Defendant Kelling did not disclose the existence of the SEM to the receivership court, and instead concealed the existence of the SEM from the court.

13. Defendant Kelling did not disclose the SEM to the creditors on the receivership, and instead concealed it from the creditors.

14. Defendant Kelling did not disclose the SEM to any bidders or prospective bidders on MAI's assets in receivership and instead concealed it from them all, except for one. That one bidder was later the high bidder and buyer of the eligible assets.

15. The SEM was valued at $255,409.00.

16. The SEM was acquired by MAI on a five-year "$1 buyout" lease. The SEM was still under lease during Defendant Kelling's appointment as Receiver.

---

[1] Hon. Catherine J. Furay, Chief Judge, United States Bankruptcy Court for the Western District of Wisconsin.

17. The receivership court excluded "*All leased equipment*" from liquidation in the receivership by court order in January, 2016.

18. The receivership court's order exempting "*All leased equipment*" from liquidation in the receivership constituted a return of title on the SEM from the Receiver, back to MAI, pursuant to Wis. Stat. 128.19(1).

19. Defendant Kelling put MAI's non-exempt assets up for bidding. The successful bidder, Plaintiff's former business partner, knew of the existence of the SEM.

20. Defendant Kelling and the successful bidder entered into an Asset Purchase Agreement.

21, At least three different versions of the Asset Purchase Agreement have come to light. The earliest version excludes "*All leased equipment*", without exception, from purchase. Later altered versions include the SEM among the assets purchased.

22. Defendant Kelling's signature, as Receiver and seller of the assets, appears on all three different versions of the Asset Purchase Agreement.

23. Defendant Kelling altered the Asset Purchase Agreement or participated in alteration of the Asset Purchase Agreement and knowingly signed these altered documents. Defendant Kelling thereby participated in spoliation of evidence.

24. Defendant Kelling distributed different versions of the aforesaid altered Asset Purchase Agreements, or participated in their distribution, to different individuals and entities at different times in pursuit of his, Kelling's, fraudulent scheme.

4

25.     Defendant Kelling converted the SEM to the buyer of the eligible assets without the receivership court's knowledge or authorization.

26.     The Receivership Trust Estate accounts show that Defendant Kelling did not deposit any monies in payment for the SEM, into the Trust account.

27.     "…[T]*he assignee* [receiver] *is a fiduciary for the creditors,,,* " (*Chapter 128: A Change Will Do Us Good,* Hon. Catherine J. Furay; Wisconsin Lawyer Vol. 95, No.3).

28.     Defendant Kelling's acts constitute a fraud on creditors on the receivership. Plaintiff was a creditor on the receivership.

29.     Defendant Kelling's acts constitute a fraud on bidders and prospective bidders on MAI's assets in receivership.

30.     Defendant Kelling's acts constitute a fraud on the Receivership Trust Estate which he was entrusted to administer.

31.     Defendant Kelling's acts constitute a fraud on the debtor in receivership, Metallurgical Associates Inc. ("MAI").

32.     Defendant Kelling's acts constitute a fraud on the receivership court.

33.     Defendant Kelling, blatantly and with knowing intent, violated that court's order exempting "*All leased equipment*" from liquidation in the receivership.

34.     As Receiver, Defendant Kelling need not have moved the court to exempt "*All leased equipment*" from liquidation and could have instead included the acquisition of such leases in the assets liquidated.

5

35. Defendant Kelling also could have later petitioned the receivership court to reverse its order exempting "*All leased equipment*" from liquidation and could have then included the acquisition of such leases in the assets liquidated.

36. Instead, Defendant Kelling intentionally concealed the SEM from the court, from creditors, and from all bidders and prospective bidders except one. Kelling then converted the SEM to that one bidder without obtaining any payment to the Receivership Trust Estate.

37. Defendant Kelling was obligated, as Receiver, to either petition the receivership court for leave to sell the SEM for the benefit of creditors, or to return the SEM, as exempt "*leased equipment*", to MAI after MAI emerged from receivership at the conclusion of proceedings.

38. Defendant Kelling had no authority to dispose of the SEM in any other manner.

39. Defendant Kelling, as Receiver, had the duties of a Trustee to the debtor, MAI, and to creditors on the receivership. Plaintiff was a creditor on the receivership.

40. Defendant Kelling, by acts and omissions, fraudulently induced Plaintiff and his wife to withdraw their $53,000 claim as creditors on the receivership by inducing them to believe the SEM would be returned to MAI after the close of the receivership.

41. Plaintiff was thereby damaged in that amount by Defendant Kelling's fraudulent acts.

6

42. Defendant Kelling's fraudulent acts resulted in a significant shortfall in monies in the Receivership Trust Estate for payment to creditors. Creditors received only twenty-two (22) cents on the dollar for their claims.

43. That shortfall would not have ensued had Kelling not moved the receivership court to exempt "*All leased equipment*" from liquidation.

44. The shortfall in monies would also not have ensued if Defendant Kelling had collected monies in payment for the SEM after he conveyed it to the aforesaid successful bidder on the non-exempt assets, or had deposited those monies in the Receivership Trust Estate account if such monies were in fact paid to Kelling.

45. Plaintiff was held personally liable for the resulting shortfall in monies due an unsatisfied creditor and was compelled to personally pay said shortfall in the amount of $107,041. Plaintiff was thereby personally damaged in that amount by Defendant Kelling's fraudulent acts.

46. Defendant Kelling's acts breached his duty as a Trustee to creditors, including Plaintiff, and to the debtor in receivership, Metallurgical Associates Inc. ("MAI").

47. Defendant Kelling's acts violated, and were outside of, Wisconsin's receivership statute, Wis. Ch. 128. Kelling fraudulently acted under color of state law.

48. Defendant Kelling's later conveyance of the SEM without title constitutes conversion by fraud.

7

49. The date of Kelling's conversion of the SEM is unknown. Kelling has refused MAI's request for relevant records.

50. Defendant Kelling could not have executed his fraudulent scheme without acting in concert with other, as yet unidentified, individuals and/or entities.

**PARTIES**

51. Plaintiff, Robert J. Hutchinson ("Hutchinson" or "Plaintiff") is president and sole shareholder of Old Metallurgical Associates, Inc., Entity No. C040016. Old Metallurgical Associates, Inc. was named Metallurgical Associates, Inc. from 1994 to March, 2016. Hutchinson and his wife, Karen, resided in Wisconsin for 37 years. They now reside in Ocala, Florida.

52. Plaintiff is suing in his personal capacity.

53. Jeffrey Kelling ("Kelling" or "Defendant") acted as Receiver authorized to sell the non-exempt assets of Plaintiff's corporation in a Wisconsin Chapter 128 Receivership proceeding. Kelling resides in Wauwatosa, Wisconsin.

54. Defendant Kelling is sued for acts under color of state law outside of and exceeding his authority under Wisconsin Chapter 128.

**FACTUAL ALLEGATIONS RELATED TO THE CAUSES OF ACTION**

55. Defendant Kelling was appointed Receiver to Plaintiff's corporation, Metallurgical Associates, Inc. (MAI)[2] under Wisconsin's receivership statute, Wis. Ch. 128.

---

[2] Five months after MAI entered receivership and his appointment as Receiver, Defendant Kelling appointed himself an officer of MAI contrary to MAI's bylaws, and illicitly altered MAI's Articles of Incorporation to change

56. Under Wisconsin Chapter 128, the court approves which of the debtor's assets may be sold and which are exempt from sale. If the court exempts an asset from sale, the Receiver is deemed to have surrendered title to that asset. Wis. Ch. 128.19(1). The Receiver takes control of the business [the debtor] and assets. The Receiver is a Trustee to both the creditors and the debtor. Wis. Ch. 128.05 History: *Voluntary Assignment of Linton v. Schmidt*, 88 Wis. 2d 183, 277 N.W.2d 136 (1979). The Receiver is a fiduciary to creditors. A corporate debtor may resume business operations upon emerging from Wis. Ch.128 receivership.

57. Plaintiff and his wife were creditors on the receivership for $53,000 they personally loaned MAI for requisite down payment on a Tescan scanning electron microscope with energy dispersive x-ray spectrometer ("SEM" hereafter).

58. The SEM was acquired on a 5-year lease with a $1 buyout at the end of the lease term entered into with M2 Lease Funds LLC.

59. Plaintiff provided Defendant Kelling with a spreadsheet, supported by his affidavit, listing all MAI assets including the SEM.

60. Kelling did not disclose the existence of the SEM among MAI's assets to the court. Instead, Kelling concealed the SEM from the court and creditors.

---

the corporation's name from "Metallurgical Associates, Inc." to "Old Metallurgical Associates, Inc." in the Wisconsin Dept. of Financial Institutions registry.

Plaintiff's corporation is referred to by its original name – Metallurgical Associates, Inc. or MAI – in the SEM lease documents, receivership court documents, the Asset Purchase Agreement, and other relevant documents. To avoid confusion, Plaintiff uses "MAI" or "Metallurgical Associates, Inc." throughout this complaint to refer to his (Plaintiff's) corporation.

61. Defendant Kelling concealed the SEM from all prospective bidders on the assets in receivership except one. That one bidder was later the high bidder on the assets.

62. Defendant Kelling then moved the receivership court for leave to commence sale of MAI's eligible assets and to exempt specific itemized assets from sale. Among the itemized assets Kelling asked the court to exempt was "*All leased equipment*". The SEM was "*leased equipment.*"

63. Defendant Kelling's motion to sell the eligible assets and to exempt "*All leased equipment;*" from sale was granted by court order.

64. Upon the court's order granting Defendant Kelling's motion to exempt "*All leased equipment*" from sale by the receivership, the Receiver surrendered title to the SEM pursuant to Wis. Ch. § 128.19(1). Kelling later liquidated the SEM without title.

65. Defendant Kelling fraudulently induced Plaintiff to believe the SEM, as "*leased equipment*", would not be liquidated. In such a case, the SEM reverts back to Plaintiff's corporation at the conclusion of the receivership pursuant to Wis. Ch. 128.

66. Defendant Kelling thereby fraudulently induced Plaintiff and his wife to withdraw their $53,000 claim as creditors during negotiations to conclude the receivership.

67. The Receiver later attempted to conceal his lack of title and conversion of the SEM by fraudulently altering the Asset Purchase Agreement by which the assets in receivership were sold.

10

68. An Asset Purchase Agreement was executed between Defendant Kelling and the high bidder on MAI's assets, Plaintiff's former business partner, Thomas C. Tefelske.

69. At least three different versions of the Asset Purchase Agreement have come to light. The earliest version excludes "*All leased equipment*" from liquidation by the receivership without exception.

70. Later versions of the Asset Purchase Agreement have been altered to include the SEM in the assets purchased.

71. Defendant Kelling is signatory on all the different versions of the Asset Purchase Agreement, both original and altered. Kelling thereby knowingly and fraudulently engaged in evidence spoliation with intent.

72. The asset buyer was represented by the firm of Cramer Multhauf & Hammes, LLC. The Cramer firm ("CMH") was cited in Wisconsin Court of Appeals District I Appeal No. 2012AP2590 which found a will and trust estate "*booklet maintained by the CMH law firm was taken apart*", that documents were "*withheld, destroyed, or altered*", and that "*the CMH firm engaged in spoliation of the evidence… in an attempt to deprive the minor beneficiaries of their rightful interests.*"

73. Regardless of any claim for the SEM made in the various altered Asset Purchase Agreements, the receivership court's prior order granting Defendant Kelling's motion to exempt "*All leased equipment*" from liquidation in the receivership stand, unchallenged.

74. During the course of the receivership Defendant Kelling assured Plaintiff by writing that assets exempted from sale by court order "*have not been sold*" but that large exempt assets were being stored with the asset buyer "*so that the Receiver does not incur additional charges*" for their storage.

75. Plaintiff relied on Defendant Kelling's fraudulent assurance that exempt assets, which included "*all leased equipment*" such as the SEM, would not be sold and were only being stored with the asset buyer to save storage costs.

76. After concealing the SEM from the court, creditors and bidders, Defendant Kelling then maneuvered the court into exempting the class of assets to which the SEM belonged, "*leased equipment*", thus avoiding identifying the SEM by name in the record to further conceal it. Kelling thereby fraudulently deceived and induced Plaintiff to believe the SEM would be returned to MAI at the conclusion of the receivership. Relying on Kelling's deceptive representations, Plaintiff withdrew his and his wife's $53,000 claim as creditors during negotiations to conclude the receivership.

77. Whether any monies were paid for the SEM is unknown. That question is ripe for discovery. What is known as factual certainty is that no monies were paid into the Receivership Trust Estate account in payment for the SEM. That fact is borne out by the accounts of the Receivership Trust Estate.

78. The Trust thereby realized a significant shortfall in monies to pay creditors. Unsecured creditors were paid only twenty-two percent (22%) of their claim on the receivership.

12

79. That shortfall would not have ensued had Kelling not moved the receivership court to exempt *"All leased equipment"* from liquidation and had included the SEM in the assets sold.

80. The shortfall in monies would also not have ensued if Defendant Kelling had collected monies in payment for the SEM after conveying it to the aforesaid successful bidder on the non-exempt assets, or had deposited those monies in the Receivership Trust Estate account if such monies were in fact paid to Kelling.

81. Plaintiff was held personally liable for an unsatisfied creditor and was compelled to personally pay that unsatisfied creditor $107,041 as a direct result of Defendant Kellin's fraudulent conversion of the SEM. Plaintiff was thereby personally damaged in that amount.

82. During the course of the receivership, Defendant Kelling violated MAI's corporate By-laws by appointing himself a corporate officer in order to alter MAI's Articles of Incorporation and change MAI's name to Old Metallurgical Associates, Inc. the Wisconsin Dept. of Financial Institutions registry.

83. MAI (see Footnote 2) sent demand to Defendant Kelling, in his capacity as an MAI officer, for all documents, records and correspondence regarding the SEM to determine when and how it was conveyed from MAI's possession. Kelling refused MAI's demand.

84. Pursuant to Wisconsin Statute § 180.0843, Defendant Kelling remains an MAI officer to this day, with a fiduciary and duty of candor to MAI.

13

85. The SEM – an asset in receivership valued at over a quarter-of-a-million dollars – literally vanished from Defendant Kelling's physical possession and oversight without a documented trace.

86. Defendant Kelling fraudulently converted the SEM, personally damaging Plaintiff. The date of that conversion is unknown because Kelling has custody of the relevant records, but refuses to turn them over to MAI.

## FIRST CAUSE OF ACTION
### Right to Be Secure From Unreasonable Seizures
### 42 U.S.C. §1983 – Fourth and Fifth Amendment; Art. 1, § 11, Wisconsin Constitution

87. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

88. Plaintiff has a direct interest in the SEM by reason of the $53,000 Plaintiff and his wife personally paid as a requisite down payment upon which lease of the SEM was conditioned.

89. Defendant Kelling and parties unknown violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizure of property by fraudulently converting Plaintiff's interest in property under color of state law.

90. Defendant Kelling's unlawful acts were done with specific intent to deprive Plaintiff of his right to be secure in his interest in his property.

91. Defendant Kelling was deliberately indifferent to the likely consequence that his seizure of the SEM would result in a shortfall in monies in the Receivership Trust Estate

14

account and that Plaintiff would likely become personally liable to unsatisfied creditors on the receivership.

92.    As a direct and proximate consequence of Defendant Kelling's unlawful acts, Plaintiff has suffered and continues to suffer loss of his property interest and loss of monies Plaintiff personally paid to unsatisfied creditors from the shortfall in Receivership Trust Estate funds and is entitled to compensatory damages.

**SECOND CAUSE OF ACTION**
**Right to Due Process of Law; 42 U.S.C. § 1983**
**Fifth and Fourteenth Amendments; Art. I, § 1, Wisconsin Constitution**

93.    Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

94.    Defendant Kelling owed Plaintiff a duty under the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, § 1 of the Wisconsin Constitution to protect Plaintiff's personal property and personal interest in property under Defendant Kelling's control.

95.    Defendant Kelling owed Plaintiff a duty under the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, § 1 of the Wisconsin Constitution and lawfully administer Plaintiff's claim as a creditor on the receivership.

96.    Despite these well-defined duties, Defendant Kelling fraudulently and under color of law concealed property from the courts, creditors and prospective bidders in which Plaintiff had an interest.

15

97.     Despite these well-defined duties, Defendant Kelling fraudulently and under color of law induced Plaintiff to withdraw his claim as a creditor on the receivership.

98.     Despite these well-defined duties, Defendant Kelling fraudulently and under color of law Defendant Kelling converted property in which Plaintiff had an interest.

99.     Despite these well-defined duties, Defendant Kelling fraudulently and under color of law failed to deposit any monies in the Receivership Trust Estate account from payment for property in which Plaintiff had an interest, leaving Plaintiff liable for the consequent shortfall.

100.     As a direct and proximate consequence of Defendant Kelling's acts, Plaintiff has suffered and continues to suffer loss of property in which he has an interest and its value and is entitled to compensatory damages.

## THIRD CAUSE OF ACTION
### Common Law Fraud

101.     Plaintiff re-alleges and incorporates the allegations set forth with particularity in the preceding paragraphs as though fully set forth hereat.

102.     Plaintiff alleges Defendant Kelling committed acts of common law actual fraud, constructive fraud, aiding and abetting actual fraud and/or aiding and/or abetting constructive fraud that damaged Plaintiff.

103.     Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Defendant Kelling damaged Plaintiff through his fraudulent acts as set forth with particularity heretofore and hereafter, alleging Defendant Kelling represented facts, that those

16

representations of facts were false, that those false representation were material, that Defendant Kelling knew the falsity of his representations, that Defendant Kelling intended that Plaintiff act, or refrain from acting, on his representations, that Plaintiff was unaware of the falsity of Defendant Kelling's representations and was injured thereby, that Plaintiff relied on Defendant Kelling's representations, that Plaintiff had a right to rely on Defendant Kelling's representations, and that Plaintiff was consequently and proximately injured thereby as set forth with particularity heretofore and hereafter and is entitled to compensatory damages.

104. Plaintiff alleges Defendant Kelling failed to disclose and concealed the SEM from bidders and prospective bidders, from creditors, and from the receivership court, and then moved the court to exempt a class of assets from sale that included the SEM, without naming the SEM so as to prevent its inclusion and identification by name in the court record. Kelling falsely noticed Plaintiff that large exempt assets, of which the SEM was one such, were not sold but were being stored with the buyer to save storage costs. Kelling knowingly made these fraudulent statements with intent to deceive Plaintiff to believe he, Kelling, had not and would not liquidate the SEM in order to preempt any action by Plaintiff to secure the SEM. Defendant Kelling then liquidated the SEM and failed to deposit any monies from that liquidation in the Receivership Trust Estate account.

105. As a direct and proximate consequence of Defendant Kelling's fraudulent acts, Plaintiff has suffered and continues to suffer loss of property in which he has an interest and its value and is entitled to compensatory damages.

## FOURTH CAUSE OF ACTION
### Fraud In The Inducement

106. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

107. Defendant Kelling made false statements of material fact. Kelling stated by writing the assets to be liquidated did not include the SEM. Kelling moved the receivership court to exempt the SEM from liquidation in the receivership and thereby asserted the SEM would not be liquidated. Kelling stated that large assets were not liquidated but were stored with the buyer of the eligible assets to save storage costs. Kelling later, on a date unknown, liquidated the SEM. Kelling stated he had liquidated all assets for the benefit of creditors and collected monies resulting from those liquidations. Kelling stated he had deposited monies from those liquidations in the Receivership Trust account. Kelling stated he would distribute all monies resulting from liquidated assets for the benefit of creditors. Plaintiff alleges all of these statements of material fact by Kelling are false.

108. Plaintiff alleges Defendant Kelling knew his aforesaid statements were false. Kelling did include the SEM in the assets that he liquidated. Kelling did not exempt the SEM from liquidation contrary to the exemption of the SEM that Kelling himself moved the court to grant and which the court did grant by court order. Kelling did liquidate the SEM. Kelling did not deposit any monies derived from the liquidation of the SEM in the Receivership Trust account. Kelling did not distribute any monies derived from the liquidation of the SEM to creditors on the receivership.

Case 2:22-cv-00382-PP    Filed 03/28/22    Page 18 of 26    Document 1

109. Plaintiff alleges Defendant Kelling knew Plaintiff intended to resume business when MAI emerged from receivership. Kelling knew the SEM was essential to MAI's business. Kelling assured Plaintiff that the SEM was exempt from liquidation by Kelling's motion that the court so exempt the SEM from sale in the receivership. Kelling reinforced Plaintiff's belief that the SEM was exempt from liquidation by falsely assuring Plaintiff that large exempt assets such as the SEM were not sold but were only being stored with the buyer of the eligible assets to save costs incurred by the receivership. Kelling knew by Plaintiff's response to his false statements that Plaintiff would act in accordance with Kelling's false statements.

110. Plaintiff was a creditor on the receivership. Plaintiff relied on Defendant Kelling's statements in balancing the value of Plaintiff's $53,000 claim as a creditor with an expedited conclusion of the receivership after which MAI would resume business including resumption of providing SEM services to customers that billed at a rate of $325 per hour. Upon that calculation, and relying on Kelling's representations, Plaintiff withdrew his and his wife's claim as creditors the receivership.

111. Plaintiff alleges Defendant Kelling knew Plaintiff would be liable for and compelled to pay any shortfall due creditor Kohner Mann & Kailas ("KMK") after an insufficient payment from the Receivership Trust Estate. Plaintiff alleges Kelling knew there would be a significant shortfall in monies due KMK if he, Kelling, did not deposit monies from liquidation of the SEM into the Receivership Trust Estate account.

19

112. Plaintiff alleges Defendant Kelling did not deposit monies from his liquidation of the SEM in the Receivership Trust Estate account.

113. Plaintiff was compelled to pay unsatisfied creditor KMK $107,041 to make KMK whole for their claim on the receivership.

114. As a direct and proximate consequence of Defendant Kelling's acts, Plaintiff has suffered and sustained, and continues to suffer and sustain, aforesaid pecuniary loss and is entitled to compensatory damages.

## FIFTH CAUSE OF ACTION
### Conversion

115. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

116. Plaintiff had an ownership interest in the SEM by Plaintiff's and his wife's personal payment of $53,000 as a down payment on the SEM.

117. Plaintiff had possessory interest in the SEM by Plaintiff's and his wife's personal payment of $53,000 as a down payment on the SEM.

118. Plaintiff had possessory interest in the SEM by Plaintiff's personal guarantee of payment in full on MAI's lease of the SEM entered into with M2 Lease Funds, LLC.

119. Plaintiff alleges Defendant Kelling had a duty owed to Plaintiff to protect his interest in the SEM as receiver under Wis. Stat. 128 and as an MAI officer under Wis. Stat. 180. Kelling breached those duties to protect Plaintiff's personal interest in the property and

20

wrongly exerted dominion over the property and denied Plaintiff's constitutional and statutory rights.

120. Plaintiff alleges that once Defendant Kelling failed to disclose the SEM to prospective bidders, except for one bidder, that once Kelling failed to disclose the SEM to creditors and the receivership court, moved for and was granted the court's order exempting "*All leased equipment*" from liquidation, and once Kelling thereby surrendered title to the SEM, that Kelling had no legitimate interest that gave him the legal right or authority to convert Plaintiff's property interest in the SEM without due process, and without fair compensation to Plaintiff. Plaintiff alleges Kelling converted the SEM under color of state law.

121. As a direct and proximate consequence of the wrongful acts of Defendant Kelling, Plaintiff has suffered and continues to suffer loss of his property interest and is entitled to compensatory damages.

**SIXTH CAUSE OF ACTION**
**Conspiracy; 18 U.S.C. §§ 1961 -1968 (RICO)**

122. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

123. This count is brought by Plaintiff against Defendant Kelling alleging a cause of action under 18 U.S.C. § 1962(d), for conspiring to violate 18 U.S.C. § 1964(c).

124. At all relevant times, the Plaintiff and Defendant Kelling were "persons" pursuant to 18 U.S.C. § 1961(3).

21

125. At all relevant times Defendant Kelling acted with s, a group of individuals, whose identification awaits discovery, associated in fact although not a legal entity, that were an "Enterprise" as that term is defined in 18 U.S.C. § 1961(4), that is, a group of business entities and individuals associated in fact, which were engaged in, and the activities of which affected, interstate commerce. Defendant Kelling and each individual and entity participated in the operation and management of the Enterprise. At all relevant times one or more of the individuals and entities, as a member of that enterprise, engaged in interstate commerce pursuant to 18 U.S.C. § 1962(a).

126. The Enterprise functioned as a continuing unit for more than two years to achieve shared goals through unlawful means including the following: (1) to deceive bidders and perspective bidders into believing Defendant Kelling would not liquidate the SEM in the Wisconsin Chapter 128 Receivership of Plaintiff's corporation; (2) to deceive the receivership court to exempt the SEM from liquidation in open bidding of the assets of Plaintiff's corporation in receivership; (3) to deceive creditors as to the value of the asset of Plaintiff's corporation in receivership and which assets were eligible and which were exempt form liquidation; (4) to deceive Plaintiff as to the "Excluded" designation of the SEM and thereby induce Plaintiff to withdraw his legitimate his claim on the receivership for $53,000 Plaintiff personally paid as down payment on the SEM; (4) to illicitly and deceitfully convert the SEM and divert its value from monies deposited in the Receivership Trust Estate account thereby leaving Plaintiff liable to an unsatisfied creditor on the receivership in the amount of $107,041 which Plaintiff was compelled to pay personally; (5) to deceitfully misrepresent

22

their illicit acts to Waukesha County Circuit Court so as to consummate and complete the object of their illicit enterprise.

127. The Enterprise pursued a course of conduct of deceit, misrepresentation, and conspiracy to defraud the receivership court, the bidders and perspective bidders on the assets of Plaintiff's corporation's eligible assets, on the creditors of Plaintiff's corporation and the Receivership Trust itself, and on Plaintiff, and to illicitly obtain profit derived therefrom, as well as to shield themselves from scrutiny. The fraudulent, misleading and unlawful efforts of the Enterprise have continued from its inception to the present and threaten to continue into the future.

128. Defendant Kelling and others to be identified in discovery received and continue to receive monies as a result of their fraudulent deception of Plaintiff, creditors, bidders and perspective bidders, and the receivership court. Defendants invested and continue to invest the consequent monies in their Enterprise. Defendant's Enterprise engages in and affects interstate commerce, and defendant's acts, by obstructing Plaintiff earning power, constitute an injury resulting from the investment of racketeering income derived from, and distinct from the injury caused by the predicate acts of defendants in defrauding Plaintiff.

129. At all relevant times, the Enterprise has existed separate and apart from defendants' racketeering acts and their conspiracy to commit such acts. The Enterprise has an ascertainable structure and purpose beyond the scope and commission of Defendants' predicate acts. It has a consensual decision making structure that is used to coordinate

23

strategy, manipulate documentary evidence, suppress the truth about the eligible and excluded assets of Plaintiff's corporation, the monies paid and not paid to the Receivership Trust Estate for those assets, and the monies due creditors by the proper and legitimate funding of the Receivership Trust Estate, and to otherwise further defendants' fraudulent scheme.

130. But for Defendant Kelling's and others conspiracy to violate the above cited provisions of the Racketeer Influenced and Corrupt Organizations Statute, Plaintiff would not have withdrawn his $53,000 claim on the Receivership Trust for his personal payment of the down payment on the SEM to the Wisconsin Chapter 128 Debtor

131. But for Defendant Kelling's and others fraudulent scheme, the Receivership Trust Estate would have been funded by additional monies to the value of the SEM and Plaintiff would not have been personally liable for, and would not have been compelled to personally pay the $107,041 shortfall demanded by unsatisfied creditor Kohner, Mann & Kailas, S.C.

132. Defendant Kelling and others are liable if they "participate" in the affairs of an Enterprise through a pattern of racketeering activity. As set forth heretofore, Defendant Kelling and others agreed to participate in the fraudulent scheme, to further perpetrate it by their fraudulent acts and representations, and to carry out their fraudulent scheme, and did carry out their fraudulent scheme.

133. Plaintiff asserts claims against Defendant Kelling and against others to be identified by discovery for conspiring to violate 18 U.S.C. § 1962(c), which prohibits any

24

person employed by or associated with an enterprise engaged in interstate commerce from participating in the affairs of the enterprise through a pattern of racketeering activity. Kelling's and other's conspiracy to violate 18 U.S.C. § 1962(c) is a violation of § 1962(d).

134. As a result of the Defendant Kelling's and other's racketeering activity set forth heretofore, Plaintiff has been damaged personally in an amount to be determined at trial. Plaintiff's personal damages were proximately caused by Kelling's and other's fraudulent acts and misrepresentations and by Kelling's and other's conspiracy to commit those fraudulent acts and misrepresentations.

135. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold his damages plus costs from the Defendant Kelling and others identified in discovery and joined as defendants to this action.

**WHEREFORE**, Plaintiffs pray as follows:

1. Compensatory damage for the personal damages sustained by Plaintiff by loss of Plaintiff's down payment of $53,000 on the SEM, with interest calculated and determined as decided by a jury at trial.

2. Compensatory damage for the personal damages sustained by Plaintiff by payment of an unsatisfied creditor on the receivership in the amount of $107,041, such damage resulting from diversion of monies due from the SEM but for the fraudulent conversion of the SEM by Defendant Kelling and others, with interest calculated and determined as decided by a jury at trial.

3. Loss to Plaintiff of billing generated by the SEM calculated at a rate of $325 per hour over a period of time, a number of hours, and an amount to be determined by a jury at trial.

4. An award of treble compensatory damage pursuant to Defendant Kelling's and other's violation of 18 U.S.C. §§ 1961 – 1968 (RICO) as set forth under the Sixth Cause of Action.

5. All other damages as determined by an expert in calculation.

6. Punitive damages in an amount to be determined by a jury at trial.

7. Plaintiff's costs and disbursements as allowed by law.

8. Such other and further relief as the Court may deem just and proper.

Dated March 21, 2022,

Respectfully submitted,

Robert J. Hutchinson
Represented pro se
530 NE 48th Avenue
Ocala, FL 34470
(770) 878-0639
robh@metallytics.com

26