UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT J. HUTCHINSON,

        Plaintiff,

                                Case No. 22-cv-382-pp

    v.

JEFFREY KELLING,

        Defendant.

**ORDER MEMORIALIZING THE COURT'S RULINGS AT
SEPTEMBER 14, 2023 MOTION HEARING**

On March 28, 2022, Robert Hutchinson—representing himself—filed a complaint attacking a receivership that resolved in Waukesha County Circuit Court in 2016. See Old Metallurgical Associates, Inc. v. New MAI, Inc., Case No. 2018AP619, 2019 WL 1271208, *1 (Wis. Ct. App. Mar. 20, 2019). In the state receivership, defendant Jeffrey Kelling served as the receiver for the plaintiff's company, Metallurgical Associates, Inc. (referred to as Old Metallurgical Associates or "Old MAI"). Id. On December 13, 2016, Waukesha County Circuit Court Judge Maria Lazar approved the final accounting, fees and expenses, the final distribution, ratified the acts of the defendant and discharged him as the receiver. Dkt. No. 15-11.

Judges have told the plaintiff that he cannot reopen or revisit the receivership. Waukesha County Circuit Court William Domina denied his motion to reopen, and the Wisconsin Court of Appeals affirmed. See Old

Metallurgical Associates, 2019 WL 1271208, at *2-3. The Waukesha County Circuit Court sanctioned the plaintiff. _In re_ Old Metallurgical Associates, Inc., Waukesha County Case No. 2015CV2187 (sanctioned twice, once for $5,500 and once for $5,049); Tefelske, _et. al._ v. Metallurgical Associates, Inc., _et. al._, Waukesha County Case No. 2012CV3673 (sanctioned $11,368.50). The Milwaukee County Circuit Court sanctioned the plaintiff. Robert J. Hutchinson v. Kohner, Mann & Kailas, S.C., Milwaukee County Case No. 2018CV3389 (sanctioned $7,500); Kohner, Mann & Kailas, S.C. v. Metallurgical Associates, Inc., _et. al._, Milwaukee County Case No. 2015CV6012 (sanctioned $5,000 and affirmed by the Court of Appeals) (all available at https://wcca.wicourts.gov). In 2021, the Northern District of Georgia dismissed the plaintiff's challenge to the receivership for lack of personal jurisdiction over the defendants. Hutchinson v. Kelling, _et. al.,_ Case No. 19-CV-5672-MHC, Dkt. No. 79 at 25 (N.D. Ga. Aug. 3, 2020).

In this district, on June 14, 2021 (some eight months before the plaintiff filed the complaint in this case), Judge Nancy Joseph dismissed a fifty-four-page complaint against various defendants involved in the receivership—including Kelling—on Rooker-Feldman[1] grounds. Hutchinson v. Kelling, Case No. 20-CV-1264, 2021 WL 7543632, *4 (E.D. Wis. June 14, 2021). Judge Joseph labeled the plaintiff's complaint as "simply a repackaging of the issues he lost before the Waukesha County Circuit Court in Case No. 2015CV2187."

---

[1] Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District Court of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Id. That same day, Judge Joseph issued a separate order imposing Rule 11 sanctions and barring the plaintiff "from further filings in this Court regarding the allegations alleged in the instant complaint." Hutchinson v. Kelling, Case No. 20-CV-1264, 2021 WL 2413807, *2 (E.D. Wis. June 14, 2021). At the end of the ruling, she ordered that the plaintiff could not sue the defendants— including Kelling—for claims "arising out of the litigation over the ownership of MAI's books and records." Id. The Seventh Circuit affirmed the dismissal. Hutchinson v. Am. Ass'n for Lab. Accreditation, Inc., Case No. 21-2289, 2022 WL 819517, *2 (7th Cir. Mar. 17, 2022).

Eleven days after the Seventh Circuit issued its order, the plaintiff filed the *pro se* complaint in the instant case and paid the filing fee. Dkt. No. 1. This time, he alleged that the defendant had fraudulently converted an asset in the receivership proceeding. Id. at 2. The defendant filed a motion to dismiss. Dkt. No. 12. The court issued its usual reminder that in lieu of responding to the motion to dismiss, the plaintiff could amend, dkt. no. 16, and the plaintiff did so, dkt. no. 20, which prompted the defendant to file a second motion to dismiss, dkt. no. 21.

This order memorializes the court's oral order of dismissal and resolution of other pending motions. It has been far too long in coming. Both parties have repeatedly contacted the court's staff to ask if there is anything that they need to do to assist the court in issuing this decision. The court's staff has repeatedly responded that the court is aware that it needs to issue an order and that it will do so when it is able. The court apologizes to the parties for

taking so long to memorialize its rulings, especially when it told the parties at the last hearing that it hoped to get an order out within a few days. The fault lies entirely with the court.

The court begins by discussing the filing bar Judge Joseph imposed.

## I.    Judge Joseph's Order in Case No. 20-cv-1264

The defendant did not argue that the court should dismiss this case on the ground that the plaintiff was subject to a filing bar when he filed it, but this court must consider that issue because the plaintiff has engaged in a troubling pattern of conduct. Judge Joseph sanctioned the plaintiff after concluding that "imposing a filing bar is the only way to stop [the plaintiff's] vexatious filing." Hutchinson, 2021 WL 2413807, at *2. She ordered that the plaintiff "is barred from future filings in this district against the defendants named in [Case No. 20-CV-1264], arising out of the litigation over the ownership of MAI's books and records." Id. This court must consider whether the complaint in this case constitutes litigation against the defendants named in Case No. 20-cv-1264 "arising out of the litigation over the ownership of MAI's books and records." Id.

To make that determination, one must compare the two complaints. In the case before Judge Joseph, the plaintiff alleged that between November 2015 and January 2016, the defendant and his attorney, Dorothy Dey, acted outside their legal authority and "defrauded [the plaintiff] out of property in excess of $1.2 million to which they did not have title." Case No. 20-cv-1264, Dkt. No. 1 at ¶4. The plaintiff alleged that the defendant had led the state court to believe that "all books and records" were exempt from the sale in the

4

receivership but that after the court had affirmed the exemption, the defendant had sold the records to the plaintiff's former partner and their company. Id. at ¶¶5-10. The plaintiff further alleged that the defendant and Attorney Dey coerced him into surrendering the records and a claim for loans the plaintiff had made to the company in the amount of $53,000. Id. at ¶17. In the case before Judge Joseph, the plaintiff sued the defendant, Dey and others involved in the receivership, alleging common law fraud, fraud in the inducement, conversion, conspiracy to interfere with civil rights and a RICO violation. Id. at ¶¶90-163.

In the instant complaint, the plaintiff similarly alleged that the defendant—who was a defendant in the case before Judge Joseph—converted an asset to which he did not have title. This time, the plaintiff focuses on a single, "quarter-million dollar asset—a Tescan scanning electron microscope with energy dispersive x-ray spectrometer (SEM hereafter)," which he alleges "disappeared from the receivership inventory of assets without record." Case No. 22-cv-382, Dkt. No. 1 at ¶¶4-6. Among other things, the plaintiff alleges that the defendant, "by acts and omissions, fraudulently induced Plaintiff and his wife to withdraw their $53,000 claim as creditors on the receivership by inducing them to believe the SEM would be returned to MAI after the close of the receivership." Id. at ¶¶40. He sues the defendant under 42 U.S.C. §1983 and the Due Process Clause, and further alleges common law fraud, fraud in the inducement, conversion and conspiracy. Id. at ¶¶87-135.

In response to the defendant's first motion to dismiss, the plaintiff filed an amended complaint asserting that this case was "about a receiver who concealed the paid-in accrued value of a $257,000 asset from the court, moved the court to exempt that asset from the sale, then after the bidding ended, 'sold' that asset without possessing title to it." Dkt. No. 20 at ¶4. The plaintiff alleged in the amended complaint that the defendant had moved for an order exempting "all leased equipment" (including the SEM) from the sale of assets, sold or converted the SEM outside of the court order, refused to produce any records and caused a shortfall in the estate leaving the plaintiff personally liable. Id. at ¶¶5, 12, 14, 16, 30, 46, 52, 84, 125.

The plaintiff has tried to plead around Judge Joseph's filing bar by confining this suit to a single asset instead of all the assets involved in the receivership, but he still seeks records relating to an asset the defendant allegedly concealed from the receivership court. The court concedes that in this case the plaintiff has not stated directly that the defendant exempted and then sold "all of the books and records" of the company. Instead, he has claimed that the defendant exempted a lease on an asset that the defendant then sold without possessing title to the asset. But the plaintiff then asserts that to prove his case, he needs the records relating to the asset. The lease is related to the same $53,000 claim that he raised in Judge Joseph's Case No. 20-cv-1264.

It is more than arguable that the claims in the case before this court are a subset of the claims that the plaintiff has pled in other courts, including Judge Joseph's, after settling his claims in the state court in 2016. His

assertion that the defendant fraudulently exempted a lease that the defendant then sold without title is a variation on a theme: that the defendant exempted or otherwise concealed assets from the receivership court, fraudulently converted the assets, refused to produce relevant records and caused the plaintiff to relinquish or lose the $53,000 he took as a loan against his retirement.

That said, because Judge Joseph's order court barred the plaintiff from suing the defendant for any claims "arising out the litigation over the ownership of MAI's books and records," and because the complaint in this case does not directly challenge the ownership of MAI's books and records, the court will not dismiss the case on the ground that the plaintiff violated Judge Joseph's filing bar. Below, the court will analyze—and grants on its merits—the defendant's motion to dismiss, dkt. no. 21, and his motion for sanctions, dkt. no. 34, and order that the plaintiff may file no further lawsuits in this district unless he meets certain conditions.[2]

---

[2] On August 22, 2023, in a miscellaneous case filed by the plaintiff, Judge J.P. Stadtmueller of this district issued a filing bar like the one this court will issue. Judge Stadtmueller ordered that the Clerk of Court "return unfiled any papers, including any new lawsuits, that Robert Hutchinson attempts to file in any case other than *Hutchinson v. Kelling*, 22-cv-382 (E.D. Wis.), unless and until he certifies in writing that he has paid in full the sanctions imposed against him in *Hutchinson v. Kelling*, No. 20-cv-1264 (E.D. Wis.), except for any criminal case in which Robert Hutchinson is a defendant or any application for habeas corpus that Robert Hutchinson may wish to file." In the Matter of American Association for Laboratory Accreditation, Inc., Case No. 23-mc-47-JPS (E.D. Wis.), Dkt. No. 4 at 7. The plaintiff initiated that lawsuit almost five months after filing this one, so Judge Stadtmueller's bar was not in effect at the time the plaintiff filed the complaint in this case.

7

## II. Plaintiff's Motion for Leave to File Sur-reply and Additional Paper (Dkt. No. 28); Plaintiff's Motion to Extend Time to Respond to Defendant's Motion to Dismiss (Dkt. No. 31)

The plaintiff asserts that the defendant addressed for the first time in his reply brief, allegations in the amended complaint at paragraphs 64 and 65 that the defendant has exclusive control of the business records. Dkt. No. 28 at 2. According to the plaintiff, the defendant's reply brief "makes a misleading factual claim . . . by conflating the receivership-court record with the business records of Plaintiff's company." Id. The plaintiff further asserts that the defendant claims the "motion to sell and the receivership-court order granting it '**specifically** state that the leases . . . related to the SEM, were assigned to the buyer.'" Id. (emphasis in original). The plaintiff asserts that this statement is false because the records say that the buyer "proposed" to assume the SEM lease but the word "lease" doesn't appear in later court documents. Id. at 3.

The defendant responds that he raised no new arguments in the reply brief. Dkt. No. 30 at 1. The defendant contends that the plaintiff's arguments regarding control of the business records are red herrings; he says the records are immaterial to the plaintiff's claims in this case, which are based on the defendant's alleged failure to include an asset in the underlying receivership. Id. at 1. The defendant says that the Waukesha County Circuit Court relieved him of all responsibility for, or liabilities with respect to, the assets. Id. The defendant points out that the plaintiff repeatedly "makes misrepresentations as he knows what happened with the SEM in the receivership action" and participated in the settlement. Id. at 2.

8

The plaintiff then filed a Civil Local Rule 7(h) (E.D. Wis.) expedited, non-dispositive motion for extension of time to file a reply brief in support of his motion to file a surreply brief (in opposition to the motion to dismiss). Dkt. No. 31 at 2. The plaintiff said that he underwent abdominal surgery, which was performed out of state on November 7, 2022. Id.  He claimed that during that time, he had limited access to the internet and printing facilities, and he asked for an extension of time until December 14, 2022 to file his reply brief. Id. The plaintiff then filed his reply in support of the motion to file a surreply on December 9, 2023, apparently assuming the court would grant his motion. Dkt. No. 33.

The court has orally denied both of the plaintiff's motions. Dkt. No. 56. Surreplies generally are disfavored, Fitzgerald v. Achterberg, Case No. 19-cv-774, 2021 WL 808650, at *1 (W.D. Wis. March 3, 2021)), and courts grant leave to file them "only rarely," Groshek v. Time Warner Cable, Inc., Case No. 15-cv-157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016, aff'd, 865 F.3d 884 (7th Cir. 2017). In his amended complaint, the plaintiff says, "this is a case about a receiver who concealed the paid-in accrued value of a $257,000 asset from the court, moved the court to exempt that asset from the sale, then after bidding ended, 'sold' that asset without possessing title to it." Dkt. No. 20 at ¶4. The defendant, in his reply brief, did not raise a new argument—he responded to the plaintiff's argument that the defendant has exclusive control over the company's records. Dkt. No. 27 at 11. The defendant said that he was discharged on December 13, 2015 and owes no duty with respect to the

9

records. Id. The court needed no further briefing on this issue, so no extensions were necessary.

### III. The Plaintiff's Motion for Leave to Conduct Limited Jurisdictional Discovery (Dkt. No. 47)

A. The Plaintiff's Brief (Dkt. No. 47)

Six months after the defendant filed his motion to dismiss, the plaintiff filed a motion for leave to conduct jurisdictional discovery under Rule 26(b)(1). Dkt. No. 47. The plaintiff argued that the defendant exempted the SEM and then sold it without title. Id. at 3. He claimed that the defendant's Exhibit 5 (Dkt. No. 24-5) had been altered from the original, that the plaintiff had a personal financial interest in the SEM, id. at 4, and that the defendant and M2 Lease Funds LLC were in sole possession of the material documents, id. at 5. The plaintiff claimed that the defendant had refused his demands for these "company owned records." Id. at 6. Apparently to circumvent Judge Joseph's prior orders, he distinguished between the company-owned records generated before the asset sale and the records generated after the sale. Id. The plaintiff sought documents to establish "whether the SEM lease contract was actually assigned by M2 Lease Funds LLC, what authorization for assignment [the defendant] provided M2 including a court order reversing the court's prior order exempting '*All leased equipment*' from the assets in receivership (which [the defendant] has yet to introduce), the disposition of [the plaintiff's] $38,311.35 personal interest in the SEM, and any other communications and documents bearing on the issue of this Court's jurisdiction." Id. at 12 (emphasis in original).

B.    The Defendant's Response (Dkt. No. 49)

The defendant opposed the motion because (1) the facts the plaintiff alleged were "blatantly incorrect and unsupported by the record;" (2) the motion to dismiss included all necessary evidence from the state court receivership action; and (3) the court first should resolve the motion to dismiss given the plaintiff's "vexatious and litigious conduct." Dkt. No. 49 at 2. The defendant pointed to the state court orders vesting the defendant—as the receiver—with the authority to assign leases, negotiate and sell assets (Dkt. No. 24-2), and the ability to consummate the sale under the terms of the offer upon payment of the purchase price (Dkt. No. 24-7). Dkt. No. 49 at 3. He also cited the plaintiff's failure to object regarding the value of the SEM, despite notice and representation by counsel during the receivership action (Dkt. No. 14-2), as well as the state-court order retaining and declaring exclusive jurisdiction to resolve all disputes regarding the receiver (Dkt. No. 15-7). Id.

C.    The Plaintiff's Reply (Dkt. No. 51)

The plaintiff replied that the lease assignment would establish that the defendant was acting in his individual interest. Dkt. No. 51 at 3, 4. The plaintiff continued to assert that the records belonged to him and the company and that the defendant's refusal to produce them constituted conversion. Id. at 4. The plaintiff pointed to the language in the court order stating that the assets do not include leased equipment. Id. at 4, 5. And he asserted that it is the defendant—not he—who is trying to overturn the court order. Id. The plaintiff

11

warned that the defendant could not claim that the court has no jurisdiction and simultaneously oppose jurisdictional discovery. Id. at 7.

D.    Analysis

The defendant filed his first motion to dismiss on July 29, 2022, dkt. no. 12; the plaintiff waited nine months to file his motion for leave to conduct jurisdictional discovery, dkt. no. 47. Notably, the plaintiff waited to ask leave to conduct discovery until after the defendant had filed a reply in support of his motion to dismiss the amended complaint, dkt. no. 27, after the defendant had filed a motion for sanctions, dkt. no. 34, and after the defendant had moved to stay the case pending a decision on the motion to dismiss, dkt. no. 43.

More to the point, the defendant's motion to dismiss does not require the court to determine what the defendant did or did not do. There were two bases for the defendant's motion to dismiss the amended complaint. First, he alleged that the Rooker-Feldman doctrine bars the claims in the amended complaint. Dkt. No. 22 at 20. Second, he asserted that the doctrine of collateral estoppel (issue preclusion) bars the plaintiff's claims. Id. at 27.

The Rooker-Feldman is an abstention doctrine that bars the federal court from exercising jurisdiction over a case brought by the state-court losing party where the federal case is "closely enough related" to a state court ruling or judgment that federal court review would constitute "appellate" review—even if the losing party is not directly asking the federal court to review the state court judgment. Mains v. Citibank, 852 F.3d 669, 675 (7th Cir. 2017). The defendant's motion to dismiss asserts that there is no way this federal court

12

can grant relief without making a finding that the state court's rulings, orders and judgment were invalid. Dkt. No. 22. That argument does not require the court to decide whether the defendant exempted the SEM, sold the SEM without title or reassigned the lease contract. It requires only that the court determine whether a verdict in favor of the plaintiff in this federal case would necessarily call into question or invalidate the state-court's orders vesting the defendant with the authority to act. If the answer is yes, this court has no jurisdiction.

It is not clear how the answer to whether the SEM lease contract was assigned by M2 Lease Funds LLC or what authorization for assignment the defendant provided M2 has to do with this federal court's jurisdiction to decide the case. Even assuming (without deciding) that a federal court decided that some kind of fraud tainted the state-court decisions, *that* conclusion would result in the court implying that the state-court orders or judgment should be vacated—a violation of Rooker-Feldman. See Mains, 852 F.3d at 676 ("If we were to delve into the question whether fraud tainted the state court's judgment, the only relief we could give would be to vacate that judgment"); Nora v. Residential Funding Co., 543 F. App'x 601, 602 (7th Cir. 2013) (noting that the plaintiff had the opportunity to raise fraud allegations in the state foreclosure proceeding). The jurisdiction question hinges solely on whether the Rooker-Feldman doctrine or the doctrine of issue preclusion bar the plaintiff's federal suit. The answer to that question lies in the state court's orders and

13

judgment and in the allegations in the amended complaint. There is no need for "jurisdictional discovery." The court denied the plaintiff's motion.

## IV. Defendant's Motion to Dismiss Amended Complaint (Dkt. No. 21)

The defendant moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Dkt. No. 22 at 15. He launches a factual challenge (as opposed to a facial challenge) to the existence of jurisdictional facts underlying the allegations. A factual challenge allows the court to consider and weigh evidence outside the pleadings in order to determine whether it has subject matter jurisdiction. Bazile v. Finance System of Green Bay, Inc., 983 F.3d 274, 279 (7th Cir. 2020). For that reason, the court begins with the underlying receivership action and the cases filed by the plaintiff against the defendant to date.

### A. Background

The plaintiff and Thomas Tefelske started Metallurgical Associates, Inc. (Old MAI) and worked together for eighteen years. See Old Metallurgical Assoc., 2019 WL 1271208, at *1. Old MAI "performed analysis of past or potential metal fatigue on large structures." Id.

When Tefelske decided to retire, the plaintiff agreed to make payments to him over time. Id. Tefelske sued the plaintiff and Old MAI in Waukesha County Circuit Court for breach of contract after they failed to make the payments. The plaintiff retained Kohner, Mann & Kailas, S.C. but the law firm withdrew from representation in January 2015. Hutchinson v. Kohner, Case No. 2019AP1130 (Wis. Ct. App. Feb. 9, 2021) (available at https://wcca.wicourts.gov).

14

After three years of litigation, the parties consented to binding arbitration. See Old Metallurgical Assoc., 2019 WL 1271208, at *1. The Waukesha County Circuit Court confirmed the $219,763.29 arbitration award in favor of Tefelske. Id. Tefelske also acquired control of the trade name "Metallurgical Associates, Inc." Id.

The plaintiff did not satisfy the judgment, instead initiating a Wis. Stat. Ch. 128 receivership action in Waukesha County Circuit Court. In re Old Metallurgical Assoc., Case No. 15-cv-2187. Dkt. Nos. 23-2; 24-1 (Petition for Appointment of Receiver). The court subsequently appointed the defendant as the receiver. Dkt. Nos. 24 at ¶3; 24-2. Attorney Dorothy Dey represented the defendant. Dkt. Nos. 24 at ¶ 4; 23 at ¶3; 23-2. The plaintiff, as the president of Old MAI, assigned "all the property . . . both real and personal, tangible and intangible" to the defendant as the assignee. Dkt. Nos. 24 at ¶5; 24-3.

In the order appointing the defendant as receiver, the state court vested him with the "usual and customary powers vested in him by Chapter 128," dkt. no. 24-2 at ¶2, and granted him the authority to negotiate the sale of all or a portion of Old MAI's assets, consistent with the best interests of the creditors and claimants, id. at ¶11. The order provided that if the defendant completed a negotiation of the sale, he must notify creditors and interested parties so that they could file objections with the court. Id. If an objection was filed, the court scheduled a hearing. Id. If no objections were received, the court would enter an order authorizing the sale in accordance with the notice. Id. The plaintiff, as the debtor, was ordered to provide a list of assets and liabilities and to turn

over all books and records within fifteen days of the order. Id. at ¶5. Meanwhile, the plaintiff provided the defendant with a spreadsheet itemizing all Old MAI's assets, including the SEM. Dkt. No. 1 at ¶11. At some point, the plaintiff also provided a copy of the M2 lease for the SEM, signed by the plaintiff. Dkt. Nos. 24 at ¶7; 24-5.

The defendant put together a presentation package for the sale of Old MAI with information provided by Old MAI. Dkt. Nos. 24 at ¶6; 24-4. This package stated that the "primary physical asset of the business is the capital lease of a Scanning Electron Microscope (SEM) w/ Energy Dispersive Spectrometer used in the analysis of metal failures." Dkt. No. 24-4. The defendant found a high bidder for the sale of Old MAI's assets and on January 5, 2016, filed a Motion to Shorten Time to Hear Motion and Motion to Sell Substantially All Assets of Metallurgical Associates, Inc. and for Authority to Disburse Sale Proceeds ("Motion to Sell"). Dkt. Nos. 24 at ¶ 8; 24-6. In the motion to sell, the defendant informed the court that the receiver had negotiated an Asset Purchase Agreement with buyer Tee-Squared Services, Inc. Dkt. Nos. 24 at ¶8; 24-6 at ¶8. The Motion to Sell states that the assets do not include all leased equipment and all books and records. Id. at ¶12(F) and (I). Paragraph fourteen, however, explains that "the Buyer will assume the lease with the Landlord and with M2, and where appropriate for Buyer's ongoing operational needs, hire current or recently terminated employees of MAI." Id. at ¶14. The defendant stated that closing of the sale of the assets was scheduled to occur within five days following entry of an order approving the

16

sale. Id. at ¶16. The Motion to Sell further stated that the terms of the sale agreement were controlling to the extent that anything in the motion was inconsistent with the sale agreement and notified those who received it that if they had questions or wanted a copy of the sale agreement, they should contact Attorney Dey. Dkt. Nos. 24 at ¶8; 24-6 at ¶26. The plaintiff received a copy of the Motion to Sell. Dkt. Nos. 24; 24-6 at 7, 11.

No objections were received, and the court granted the Motion to Sell on January 25, 2016. Dkt. Nos. 24 at ¶9; 24-7; 23 at ¶3. The court stated that the "Sale Motion seeks authority to sell substantially all assets of MAI, including certain contracts to be assigned at Closing." Dkt. No. 24-7 at ¶5. The court found that the sale was "for an amount in excess of the liquidation value of the Assets." Id. at ¶9. The court stated that upon closing, "the sale of the Assets by the Receiver will constitute a valid, legal and enforceable transfer to Buyer of all right, title and interest to the Assets free and clear or all mortgages, judgments, liens, claims and encumbrances." Id. at ¶12. The receiver was "authorized to consummate the sale of the assets pursuant to the terms of the offer upon payment of the purchase price." Id. at 4. Upon the sale of the assets, the defendant was "relieved of any and all responsibility for, or liabilities with respect to, the Assets . . . ." Id. at ¶8. Finally, the court retained "exclusive jurisdiction to interpret and enforce the provisions of the Order [on the Motion to Sell], the Offer, and to resolve any disputes with respect to the sale by the Receiver of the Assets." Id. at ¶9

17

The next day, the buyer paid the purchase price and executed the Asset Purchase Agreement. Dkt. No. 24 at ¶10; Dkt. No. 24-8; see also Tefelske v. Metallurgical Associates (In re Hutchinson), 384 Wis. 2d 633, (Wis. Ct. App. 2018). Page 2 of the Asset Purchase Agreement states that the Purchaser will assume the "January 23, 2012 lease for the Tescan Vega-3 Model XMUVP scanning electronic microscope [the SEM] with energy dispersive spectrometer between Metallurgical Associates, Inc. and M2 Lease Funds, LLC." Dkt. No. 24 at ¶10; Dkt. No. 24-8 at 2-3. Schedule 1 of the list of Purchased Assets lists the SEM. Dkt. No. 24 at ¶10; Dkt. No. 24-8 at 11. Schedule 2, the Excluded Assets, specifically states that leased equipment is excluded, but it is subject to the "Purchaser's lease rights specified in the Asset Purchase Agreement and on Schedule 1," all indicating that the Buyer was taking over the lease of the SEM and the SEM was not excluded or fraudulently hidden/converted. Dkt. No. 24 ¶10; Dkt. No. 24-8 at 12.

On April 15, 2016, the defendant filed a Receiver's Status Report with the court. Dkt. No. 24 at ¶11; Dkt. No. 24-9. The report informed the court and the parties that with the approval of the sale entered by the court on January 25, 2016, the receiver had completed the sale of the debtor's business and business assets and assigned to the buyer the lease of the SEM microscope. Dkt. No. 24-9 at 1.

On November 22, 2016, the defendant filed a Final Account, Application for Approval of Final Account, the Receiver's Request for an Order Approving the Final Fees and Expenses, Final Distribution to Unsecured Creditors,

18

Ratification of all Acts of the Receiver and Discharge of Receiver ("Final Account and Discharge Application"). Dkt. No. 24 at ¶12; Dkt. No. 24-10. Again, this Final Account and Discharge Application informed the court about the sale of the assets, the fact that the receiver assigned the SEM lease to the buyer, and asked that the receivership proceedings be concluded. Dkt. No. 24-10 at 2.

On December 13, 2016, the court granted the Final Account and Discharge Application. Dkt. No. 24 at ¶13; Dkt. No. 24-11. The court stated that "[a]ny and all Objections to the Final Account filed with the Court, or otherwise a part of the record, not withdrawn, are hereby overruled on their merits." Dkt. No. 24-11 at 1. The court's order stated that "[a]ll acts of the Receiver and his counsel in this matter are hereby ratified and approved." Id. at 2.

At the hearing that day, the plaintiff's counsel read into the record a specific stipulation fully releasing the defendant and his counsel of and from "any liability whatsoever and further waive and forgive any and all claims, actions, suits, demands, rights, liabilities, charges, debts, covenants, contracts, agreements, judgments, rights to attorney fees, and causes of action, of whatever kind or nature known or unknown, foreseen or unforeseen, asserted or unasserted, that either party may have against the other except to the extent that there is a breach of the terms of this agreement and enforcement of same" for any actions taken in the receivership action. Dkt. No. 24 at ¶14; Dkt. No. 24-12 at 7, lines 19-25; 8, lines 1-5. Under oath, the plaintiff confirmed that he had heard the terms of the settlement agreement, understood the terms of the

19

agreement and agreed to the agreement. Dkt. No. 24 at ¶14; Dkt. No. 24-12 at 12-14. The plaintiff agreed to withdraw his claim for $53,000. Id. at 5, lines 10-12 ("[The plaintiff] withdraws his claim filed on or about February 15th, 2016 in the amount of $53,000.").

During the receivership case, the Tefelskes established a new company ("New MAI") and purchased the assets of Old MAI through the receivership. In addition to the SEM, the Tefelskes understood that the purchase included customer records. Dkt. No. 23 at ¶2; Dkt. No. 23-1 at 2. The purchase of the books and records was memorialized in the Asset Purchase Agreement signed by Tefelske and the defendant. Dkt. Nos 23 at ¶4; Dkt. No. 23-3 at 2, n.5. The agreement that the Tefelskes owned the customer books and records was put on the record in Waukesha County Circuit Court at a December 13, 2016 hearing before the court. Dkt. No. 23-1 at 3.

For the next two years, the plaintiff disputed whether customer records had been sold to New MAI. See Old Metallurgical Assoc., 2019 WL 1271208, at *2. The plaintiff filed a motion in a companion Waukesha County civil case demanding that the customer records be given to him. Id. at *1, n.3. The court denied the motion, found it be frivolous and sanctioned the plaintiff. Id. The court stated at a hearing on February 27, 2017 that the plaintiff's "credibility [was] zero, might even be a minus 10." Dkt. No. 24-15 at 34, lines 22-23. The court later told the plaintiff:

> I found your credibility lacking on February 27 of 2017, and a little more than 11 months later I can't change my mind about that.
> . . .

> And I hope I didn't insult your intelligence by saying I thought your argument was that of a first grader that sending a letter with a 209-page affidavit wasn't a filing, it is just plain devious. That is the word that fits you, sir. Very devious behavior.
>
> You can sit there smugly if you want, but that is what the record tells me very clearly in all of your behavior, in all of this litigation. And for that you are going to pay financially.

Dkt. No. 24-14 at 60, line 25; 61, lines 1-2, 20-25; 62, lines 1-4.

Almost a year after the receivership closed, the plaintiff filed a motion to reopen the receivership case "claiming he believed he still own[ed] Old MAI's business books and records." Old Metallurgical Assoc., 2019 WL 1271208, at *2. The court denied that motion, finding that the plaintiff did not meet the burden of proof to reopen, did not present witnesses or information and did not appear at the hearing. Id. The court observed:

> It's very clear to me that the purpose and intent of that settlement stated on the record was to tie a bow on all disputes known or unknown and that included in the disputes very clearly based upon the filings by Miss Dey [counsel for the receiver] in October 2016 was the very issue over this fight about these business records which were dealt with on that record both in terms of allowing him [the plaintiff] some [assets], not allowing him to take material personally off, he had to have a service do it, it had to be returned, which in its essence connotes maintenance and ownership by the Tefelskes in the purchase.

Id.

At a later hearing, the court held that the plaintiff's motion to reopen had been frivolous and sanctioned him, ordering him to pay the receivership's and the Tefelskes' attorney fees. Id. at *4. The plaintiff appealed the ruling and, on March 20, 2019, the Wisconsin Court of Appeals rejected all the plaintiff's arguments and affirmed the circuit court's denial of the plaintiff's motion. Id.

On December 18, 2019, the plaintiff filed a complaint in the United States District Court for the Northern District of Georgia naming as defendants the parties to the receivership, including the defendant and his counsel. Hutchinson v. Kelling, No. 19 cv 5672, Dkt. No. 1 (N.D. Ga. Dec. 18, 2019). The causes of action were similar to those in the instant case: (1) common law fraud; (2) fraud in the inducement; (3) conversion; (4) conspiracy to interfere with civil rights under 42 U.S.C. §1985(3); and (5) conspiracy to violate Racketeer Influenced and Corrupt Organizations Statute (RICO). Id. In March 2020, all the defendants moved to dismiss for lack of personal jurisdiction. Id., Dkt. Nos. 20, 21, 22. The court granted the motions on August 3, 2020. Id., Dkt. No. 79.

Two weeks later—on August 17, 2020—the plaintiff filed a case in this district attempting to re-litigate the receivership action. Hutchinson v. Kelling, Case No. 20-cv-1264, Dkt. No. 1 (E.D. Wis. Aug. 17, 2020). The plaintiff sued the Telefskes, Old MAI, the defendant, Dey (and the two firms for which Dey worked during the receivership action), the Telefeskes' attorney and his firm, the plaintiff's corporation's International Organization for Standards and the American Association for Laboratory Accreditation, Inc. ("A2LA"). Id. All the defendants filed motions to dismiss on a number of different bases, including the Rooker-Feldman doctrine. Id., Dkt. Nos. 22, 27, 29, 33, 53. On June 14, 2021, Judge Joseph granted the motions to dismiss on the basis of Rooker-Feldman for all the defendants except A2LA (whose motion she granted for failure to state a claim under Rule 12(b)(6)), and entered judgment dismissing

the plaintiff's complaint. Id., Dkt. Nos. 113, 115. Judge Joseph also granted the defendants' motion for sanctions under Rule 11 and barred the plaintiff from future filings in the Eastern District of Wisconsin against the defendants arising out of the "books and records" litigation. Id., Dkt. No. 114. The Seventh Circuit affirmed the dismissal. Hutchinson, 2022 WL 2541926, at *1.

The plaintiff does not dispute that Wisconsin judges have imposed the following sanctions on him for his conduct following the settlement in the receivership action:

> • *Tefelske et al. v. Metallurgical Associates, Inc., et al.*, Waukesha County Case 2012CV3673. The underlying business dispute. Resulted in confirmation of an arbitration award against the original MAI of $219,763.29. [The plaintiff] was subsequently sanctioned $11,368.50. He paid this amount on pain of jail.

> • *Kohner Mann & Kailas SC v. Metallurgical Associates, Inc., et al.*, Milwaukee County Case Number 2015CV6012. [The plaintiff], his wife, and the original MAI were sued by their primary law firm for unpaid fees. Judgment was granted in favor of the law firm for $101,521.62. [The plaintiff] was later sanctioned $5,000 for presenting the Court "with at least two outright lies" and making "non-meritorious arguments." The Wisconsin Court of Appeals subsequently sanctioned [the plaintiff] for filing a frivolous appeal. Dkt. No. 23-4. [The plaintiff] later sought to hold his previous law firm in contempt. The request was denied, and [the plaintiff] was held in contempt and sanctioned by the circuit court. In a companion appeal, the Wisconsin Court of Appeals affirmed. Dkt. No. 23-5. *See Kohner Mann & Kailas SC v. Metallurgical Assocs., Inc.*, 2020 WI App 41, 945 N.W.2d 368 (Wis. Ct. App. May 19, 2020) (unpublished slip op.). (Johnson Decl. ¶6, Exh. 5.)

> • *In re Old Metallurgical Associates, Inc.*, Waukesha County Case Number 2015CV2187. The receivership case. [The plaintiff] was twice sanctioned, in the amounts of $5,500 to the receiver's law firm (Esser Law LLC) and $5,049 for New MAI and the Tefelskes. These judgments remain unsatisfied.

23

- *Group File of Robert J. Hutchinson,* Milwaukee County Case Number 2018GF05. [The plaintiff] petitioned the circuit court in Milwaukee County to investigate whether his former attorney (the one whose law firm successfully sued [the plaintiff] for over $100,000 in unpaid fees) should be charged with a crime. The court held a hearing and found no evidence of a crime. [The plaintiff] then unsuccessfully sought a petition for a supervisory writ with the Wisconsin Court of Appeals. His petition for review with the Wisconsin Supreme Court was denied.

- *Robert J. Hutchinson v. Kohner, Mann & Kailas, S.C.*, Milwaukee County Case Number 2018CV3389. [The plaintiff] sued his former law firm. He was eventually sanctioned $7,500 and barred from making any further filings until the sanctions award was paid. [The plaintiff] has not paid the sanctions amount, and nevertheless has filed an appeal.

- *Hutchinson v. Kelling, et. al.*, Eastern District of Wisconsin Case Number 20CV1264. [The plaintiff] was sanctioned a total of $74,661.65, serving the purpose of deterrence and restitution and further barred [the plaintiff] from future filings in the Eastern District of Wisconsin [against] the defendants named in the lawsuit, arising out of the litigation over the ownership of MAIs books and records. *Hutchinson v. Kelling*, et al. No. 20cv1264, ECF No. 140 (E.D. Wis. Aug 9, 2021). To date, upon information and belief, [the plaintiff] has not paid any of the sanctions from this matter.

Dkt. No. 22 at 13, 14.

B.     The Defendant's Brief (Dkt. No. 22)

The defendant moves to dismiss under the Rooker-Feldman doctrine and issue preclusion. Dkt. No. 22 at 2. The defendant argues that this federal court cannot grant the plaintiff relief without finding that the judgments and orders issued by the Waukesha County Circuit Court are invalid. Id. at 20. The defendant points to paragraphs 5, 8, 10, 11, 12, 14, 39 and 55 of the amended complaint—all of which involve allegations of the defendant conspiring and converting an asset for the benefit of the plaintiff's former business partner. Id. at 21 (citing Dkt. No. 20). The defendant discusses his authority as the

24

receiver, the inclusion of the SEM in the presentation package, the Motion to Sell informing the Waukesha court that the assets were ready to be sold and that the buyer would assume the lease for equipment—including the SEM—and the court's determination that the sale of assets complied with Wis. Stat. ch. 128 in all respects. Id. at 22 (citing Dkt. Nos. 24-6, 24-7). The defendant also points to the Asset Purchase Agreement, which provided that the buyer would assume the lease of the SEM. Id. (citing Dkt. No. 24-8). The defendant emphasizes that he filed a Status Report with the court, informing the parties that the buyer had assumed the lease of the SEM. Id. at 23 (citing Dkt. No. 24-9). The court ratified and approved all the defendant's actions. Id. at 23 (citing Dkt. No. 24-11). The defendant recounts that the plaintiff never objected regarding the value of the SEM or the assumption of the lease, despite receiving notice and being represented by counsel. Id. (citing Dkt. No. 23-2). Because the SEM and the lease were included in the receivership, the defendant argues that the plaintiff's amended complaint requires the court to invalidate the orders from the Waukesha County Circuit court.

The defendant recounts that the plaintiff stipulated to release the defendant and the court approved that stipulation. Id. at 24. The plaintiff's attorney read the entire settlement agreement into the record at the December 13, 2016. Id. at 25 (citing Dkt. No. 24-12 at 4-11). The agreement included a mutual release:

> between the [defendant] and [the plaintiff] and the assignor . . . that mutual release . . . provides as follows. Other than as provided in this agreement, the parties and their successors assigns, heirs, beneficiaries and representatives hereby agree to forever mutually

25

release, acquit and discharge each other and their agents, attorneys, successors and assigns which are defined as the released parties, of and from any liability whatsoever and further waive and forgive any and all claims, actions, suits, demands, rights, liabilities, charges, debts, covenants, contracts, agreements, judgments, rights to attorney fees, and causes of action, of whatever kind or nature known or unknown, foreseen or unforeseen, asserted or unasserted, that either party may have against the other except to the extent that there is a breach of the terms of this agreement and enforcement of same. The parties represent that they have read the terms of this agreement and the mutual release provision and they are fully familiar with the terms and understand its legal effect. The parties further warrant and represent that they have consulted with their respective attorneys concerning this agreement including this mutual release provision, that they rely wholly upon their own judgment, belief and knowledge of the nature, extent and validity of any claims, liabilities, damages and/or other rights being released herein. The parties further warrant and represent that they have not been influenced to any extent whatsoever in making this mutual release by any representations or statements made by the party being released or by their attorneys, employees or agents other than as expressly set forth in this agreement. It is the express intention of the parties that no causes of action or choses in action by one of the foregoing -- by one of the parties against the other party shall survive the execution of this release.

Id. (citing Dkt. No. 24-12, Tr. p. 7, lines 8-25: Tr. p. 8, lines 1-25; Tr. p. 9, lines 1-2).

Finally, the defendant argues that the claims in the second amended complaint are barred by issue preclusion because the plaintiff cannot relitigate an issue that has been litigated and resolved. Id. at 27. The defendant asserts that all four elements of issue preclusion are present: (1) the issue is the same as that involved in the prior action; (2) the issue was "actually litigated;" (3) the determination was essential to the final judgment and (4) the party against whom estoppel is invoked was fully represented in the prior action. Id. (citing LaPreferida v. Cervecceria Modelo, S.A. de C.V., 914 F.2d 900, 905-06 (7th Cir.

26

1990)). The defendant asks the court to deny any further requests by the plaintiff to amend because the plaintiff already has filed one amended complaint. Id. at 29.

C. The Plaintiff's Response (Dkt. No. 25)

The plaintiff argues that the motion is improper under Rule 12(b)(6) because the defendant should have focused on what is in the amended complaint rather than on documents outside the complaint. Dkt. No. 25 at 1-2. The plaintiff accuses the defendant of arguing the merits and characterizes the defendant's Rule 12(b)(1) argument as "undeveloped to the point of absence." Id. at 2. He compares the defendant to Hamlet and suggests they are both tragic because they are men who could not make up their minds. Id. at 4. The plaintiff cites the Receiver's Motion to Sell the Assets, which says that the "*Assets do not include the following . . . All leased equipment.*" Id. (emphasis in original) (citing Dkt. No. 24-6 at 3). The plaintiff calls the defendant's citation to the Asset Purchase Agreement "irrelevant" because the defendant never filed it with the state court; the plaintiff says that "[w]hether or not the SEM was an asset in the receivership is a material question of fact to be decided by a jury at trial," and asserts that the agreement cannot "over turn the receivership-court order" excluding all leased equipment as assets. Id. at 5.

The plaintiff believes that the defendant conceded a material fact by not disputing the allegation that the defendant surrendered title to the SEM under Wis. Stat. ch. 128.19(1). Id. The plaintiff claims that nothing in the record establishes that the defendant "disclosed the SEM's $221,276 accrued value to

27

the court and creditors." Id. at 6. The plaintiff asserts that he has proof that he and his wife personally paid $53,000 for the initiation of the SEM lease. Id. at 7. According to the plaintiff, this is another material fact for trial. Id. at 8. As the plaintiff sees it, the defendant is the only person asking to overturn a state court order. Id. The plaintiff asserts that the defendant's defense is barred by Rooker-Feldman because the defendant wants the SEM declared an asset. Id.

With respect to issue preclusion, the plaintiff says that there was no litigation in state court over the leased SEM. Id. at 9. He believes only acts that occurred before the December 13, 2016 release are barred. Id. And because the defendant doesn't dispute the surrender of title to the SEM as alleged in the complaint, the plaintiff believes that the defendant has conceded conversion. Id. at 10.

The plaintiff next argues that defendant's acts were taken outside his position as receiver, "undertaken by him individually under color of law." Id. at 10-11. He takes issue with the materials the defendant filed with the motion to dismiss, calling them "invalid." Id. at 11. For example, the plaintiff says that the prospectus to potential bidders was not filed with the receivership court and is undated and unsigned. Id. at 11. The plaintiff attached a "different version" that he claims the defendant provided to him on November 18, 2015. (Ex. B., Dkt. No. 26-2) The plaintiff promises to "produce the document's metadata in discovery, verifying its provenance." Id. He also points to a statement by the defendant's counsel on March 1, 2016—five weeks after the asset sale—in which she told the plaintiff's counsel that "the books and records

28

have not been sold." Id. The plaintiff insists that there were different versions of the asset purchase agreement distributed and that the state court never saw the agreement. Id. at 12. The plaintiff believes that the defendant surrendered the title to the SEM the day the court granted his motion and the day before the asset purchase agreement was executed. Id. at 13. The plaintiff maintains that the defendant has exclusive control over the plaintiff's company's records and that the records are material. Id.

Finally, the plaintiff believes that the elements of *res ipsa loquitor* have been met because the defendant had a duty to the plaintiff, he had exclusive control "over the instrumentality of the damages sustained by the Plaintiff" and the plaintiff did nothing to contribute to the damages. Id. at 14. The plaintiff asks the court to convert the motion to dismiss to a motion for summary judgment. Id. at 15.

D.    The Defendant's Reply (Dkt. No. 27)

The defendant replies that the plaintiff's response highlights how the amended complaint is inextricably intertwined with the state court judgements. Dkt. No. 27 at 1. He asserts that the January 5, 2016 motion and the January 25, 2016 order specifically state that the leases from M2, related to the SEM, were assigned to the buyer. Id. at 1-2 (citing Dkt. Nos. 24-6, 24-7). The defendant also explains that the Rooker-Feldman argument is a factual challenge to jurisdiction, meaning that his Rule 12(b)(1) argument is appropriate. Id. at 3.

29

E.     <u>Analysis</u>

The plaintiff either ignores the fact, or does not understand, that a motion to dismiss under the <u>Rooker-Feldman</u> doctrine is a motion to dismiss for lack of subject-matter jurisdiction. "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." <u>Ezekiel v. Michel</u>, 66 F.3d 894, 897 (7th Cir. 1995). Because this case challenges the factual circumstances of jurisdiction rather than solely the pleading of jurisdiction, the "court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." <u>Apex Digital, Inc. v. Sears, Roebuck & Co.</u>, 572 F.3d 440, 444 (7th Cir. 2009).

As the court briefly explained above, the <u>Rooker-Feldman</u> doctrine bars parties who lost in state court from challenging the state court judgments entered before the district court proceedings commenced. <u>Jakupovic v. Curran</u>, 850 F.3d 898, 902 (7th Cir. 2017) (quoting <u>Sykes v. Cook Cnty. Circuit Court Prob. Div.</u>, 837 F.3d 736, 741−42 (7th Cir. 2016)). The doctrine stems from two cases in which "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." <u>Exxon Mobil Corp. v. Saudi Basic Inds. Corp.</u>, 554 U.S. 280, 291 (2005); <u>see</u> <u>Rooker</u>, 263 U.S. 413; <u>Feldman</u>, 460 U.S. 462. The plaintiffs in both cases asked the

district courts to overturn state court judgments. Exxon Mobil, 554 U.S. 280 at 291–92. The Supreme Court explained that under 28 U.S.C. §1257, only the Supreme Court has the authority to review state court's judgment Id. at 292.

When she barred him from bringing any more actions about the books and records against the defendant or other defendants, Judge Joseph explained the Rooker-Feldman doctrine to the plaintiff. She wrote:

> At its heart, the *Rooker-Feldman* doctrine is grounded in the principles of comity, federalism, and finality. It is intended to safeguard state court decisions from review by lower federal courts. Stated differently, lower federal courts are precluded from acting as courts of appeals for state court judgments. The Supreme Court of the United States is the only federal court that has jurisdiction to review a state court judgment. Brown v. Bowman, 668 F.3d 437, 442 (7th Cir. 2012).
>
> Despite [the plaintiff's] assertions to the contrary, his current complaint is simply a repackaging of the issues he lost before the Waukesha County Circuit Court in Case No. 2015CV2187. [The plaintiff] had the right to appeal, which he did, to the Wisconsin Court of Appeals. The court of appeals clearly considered and rejected [the plaintiff's] argument regarding the sale and ownership of MAI's "books and records." [The plaintiff] now brings the exact same claims, albeit dressed as federal racketeering and civil rights claims, for this Court to re-review. Again, lower federal courts are not courts of appeals for the state courts. But [the plaintiff] specifically implores this Court to act as such, seeking review of the state court docket and a grant of the following relief:
>
>> WHEREFORE, Upon the Court's review of the above cited documents, Plaintiff respectfully requests that this Court enter declaratory judgment affirming Plaintiff's title to, and ownership, of all books and records of Metallurgical Associates, Inc. as of January 25, 2016, and for reasonable fees and costs incurred in affirming Plaintiff's ownership of said books and records and in bringing this action.
>
> (Docket # 1 at 51.) In additional [sic] to his request that I overturn the state court's order, he asks for various other damages related to the alleged fraud perpetrated by the defendants. All of his claims,

31

whether framed as fraud, RICO, or civil rights violations, are merely a request to overturn the state court's order approving a settlement agreement transferring ownership of [the plaintiff's] books and records to the Tefelskes and New MAI. This I cannot do. For these reasons, I find that [the plaintiff's] claims against these defendants are barred by the Rooker-Feldman doctrine and are dismissed for lack of subject matter jurisdiction.

Hutchinson v. Kelling, 2021 WL 7543632, *4 (E.D. Wis. June 14, 2021).

The Seventh Circuit affirmed Judge Joseph's order granting the defendants' motion to dismiss. The Seventh Circuit explained:

Rooker-Feldman blocks [the plaintiff's] claims. Although, as [the plaintiff] observes, he was not initially a party to the state suit, he was a party to the settlement agreement, and the state court embodied that settlement in its order of December 2016. That order is a judgment for the purpose of Rooker-Feldman. See Johnson v. Orr, 551 F.3d 564, 568 (7th Cir. 2008). [The plaintiff] responds that his claim that he owns the client records is independent of the state judgment, which he insists he does not challenge. But he wants a federal district to rule that, contrary to the order, he owns the records. And he alleges that his injury did not occur until the December 2016 order. That is when, in his telling, the defendants allegedly tricked the state court into adopting the order confirming that Tefelske's business had acquired "all business books and records," including "all customer . . . files." Thus, his injury arises precisely from that order. Under Rooker-Feldman, [the plaintiff's] remedy for harm allegedly caused by an erroneous state-court judgment lay in a state appeal—which he pursued—not in federal district court. See Kelley v. Med-1 Sols., LLC, 548 F.3d 600, 603 (7th Cir. 2008).

Hutchinson, 2022 WL 819517, at *2.

With that background, the court turns to the substance of the defendant's motion to dismiss the pending amended complaint. Courts considering whether the Rooker-Feldman doctrine bars federal jurisdiction apply a two-step analysis. Andrade v. City of Hammond, Ind., 9 F.4th 947, 950 (7th Cir. 2021). First, the court determines whether the federal claims either

32

directly challenge a state court judgment or are inextricably intertwined with one. Id. (quoting Swartz v. Heartland Equine Rescue, 940 F.3d 387, 391 (7th Cir. 2019)). At this step, the court considers whether the district court is essentially being called upon to review the state court decision. Hadzi-Tanovic v. Johnson, 62 F.4th 394, 399 (7th Cir. 2023). Second, the court determines whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings. Andrade, 9 F.4th at 950. "Only if the plaintiff did have such an opportunity does Rooker-Feldman strip federal courts of jurisdiction." Id.

As the court has orally ruled, the plaintiff's federal claims are inextricably intertwined with the orders entered by the Waukesha County Circuit Court in the receivership case. As for the first step of the Rooker-Feldman analysis, the state-court record shows that the plaintiff was the "state court loser" and that he filed this federal case after the state-court proceedings ended. The face of the plaintiff's amended complaint shows that his federal claims are inextricably intertwined with the state-court rulings and judgment.

In the amended complaint, the plaintiff alleges that this is a "case about a receiver who concealed the paid-in accrued value of a $257,000 asset from the court, moved the court to exempt that asset from sale, then after bidding ended, 'sold' the asset without possessing title to it." Dkt. No. 20 at ¶4. He alleges many of the same causes of action that he asserted in the case dismissed by Judge Joseph, including a conspiracy claim for the "improper withholding of MAI financial records despite the company's request." Id. at ¶131. Throughout the amended complaint, the plaintiff references the orders

33

entered in Waukesha County Circuit Court—alleging that the defendant moved for an order exempting leased equipment, dkt. no. 20 at ¶5, that the defendant violated the court order and stole the SEM, id. at ¶8, and that the order granting the motion to sell authorizes only the sale of assets, id. at ¶55.

The court can review the underlying court records for purposes of resolving the Rule 12(b)(1) motion. The Waukesha County Circuit Court appointed the defendant as the receiver with all "usual and customary powers" vested in him by Chapter 128 of the Wisconsin Statutes. Dkt. No. 24-2 at ¶2. That order authorized the defendant to negotiate the sale of all or a portion of the debtor's assets. Id. at ¶11. The defendant had the authority to "execute, acknowledge and deliver all agreements, leases, contracts, bills of sale, assignments, releases, deeds, conveyances, transfers and other documents necessary and property to carry out the Receivership." Id. at ¶12(e). The defendant had the authority to consummate the sale of the assets at the terms of the offer on payment of the purchase price. Dkt. No. 24-7 at 3.

The plaintiff points to language in the receiver's motion to shorten time that exempted all leased equipment, dkt. no. 24-6 at ¶12(F); however, that same motion explained that the buyer would assume the lease with M2 (the SEM lease), id. at ¶14; dkt. no. 24-5. In the order granting the receiver's motion to shorten time, the court found the sale of the assets to be an amount in excess of the liquidation value of the assets, dkt. no. 24-7 at ¶9, and found that the sale complied with Chapter 128 and was the product of good faith negotiations at arm's length without collusion, commercially reasonable and a

34

fair sale, and in the interests of the receivership. Id. at ¶11. The court ordered that, upon the sale, the receiver would be relieved "of any and all responsibility for, or liabilities with respect to, the Assets, including, without limitation, any and all environmental liabilities under applicable law." Id. at ¶8. The circuit court retained jurisdiction to "resolve any disputes with respect to the sale by the Receiver of the Assets." Id. at ¶9.

The SEM is listed at page 2 of the Asset Purchase Agreement and in the Purchased Assets on Schedule 1. Dkt. No. 24-8 at ¶1, Schedule 1 (Tescan/Bruker SEM/EDS). On April 15, 2016, the defendant filed a receiver's status report, informing the state court that he had completed the sale of the business and business assets; he specifically stated that the "the Receiver, working with the Buyer, also assigned to the Buyer the leases of the Premises, the SEM (microscope) and the forklift." Dkt. No. 24-9 at ¶4. On November 22, 2016, the defendant filed a final account, application for approval of final account, the receiver's request for an order approving final fees and expenses, final distribution to unsecured creditors, ratification of all acts of the receiver and discharge of the receiver. Dkt. No. 24-10. Again, the defendant stated that he "assigned to the Buyer the leases of the Premises, the SEM (microscope) and the forklift." Id. at ¶10. On December 13, 2016, the court entered the order approving the final accounting, ratifying and approving all acts of the receiver. Dkt. No. 24-11. The court ordered that the receiver "shall be discharged and any bond may be canceled. Dkt. No. 24-11 at 2.

The defendant provided the transcript from that hearing: Attorney Dey appeared on behalf of the defendant (who also appeared in person) and Attorney Dayten Hanson appeared on behalf of the plaintiff (who appeared in person). Dkt. No. 24-12 at 1. Hanson read the agreement between the defendant (as receiver), Old Metallurgical Associates (assignor) and the plaintiff:

> The parties have agreed to settle and compromise all of their claims against each other and have agreed to full, final and binding settlement and accord of the disputes between them. [The plaintiff] withdraws his claim filed on or about February 15th, 2016 in the amount of $53,000. [The plaintiff] withdraws any objection to the receiver and the receiver's counsel's pending fee applications and the final account and what we will call the Kieffer motion concerning the records filed with the Court on or about November 22nd, 2016, and will join in the receiver's request for approval of the final account and the closing of the receivership's estate.

Id. at 5, lines 6-20.

The agreement included a mutual release, which Hanson read into the record:

> Other than as provided in this agreement, the parties and their successors, assigns, heirs, beneficiaries and representatives hereby agree to forever mutually release, acquit and discharge each other and their agents, attorneys, successors and assigns which are defined as the released parties, of and from any liability whatsoever and further waive and forgive any and all claims, actions, suits, demands, rights, liabilities, charges, debts, covenants, contracts, agreements, judgments, rights to attorney fees, and causes of action, of whatever kind or nature known or unknown, foreseen or unforeseen, asserted or unasserted, that either party may have against the other except to the extent that there is a breach of the terms of this agreement and enforcement of same. The parties represent that they have read the terms of the agreement and the mutual release provision and they are fully familiar with the terms and understand its legal effect. The parties further warrant and represent that they have consulted with their respective attorneys concerning this agreement including this mutual release provision, that they rely wholly upon their own judgment, belief and knowledge of the nature, extent and validity of any claims, liabilities, damages,

36

and/or other rights being released herein. The parties further warrant and represent that they have not been influenced to any extent whatsoever in making this mutual release by an representations or statements made by the party being released or by their attorneys, employees or agents other than as expressly set forth in this agreement. It is the express intention of the parties that no causes of action or choses in action by one of the other party shall survive the execution of this release.

Id. at 7, lines 12-25; 8, lines 1-25. The court placed the plaintiff under oath and he confirmed that these were the terms of the settlement. Id.

The fact that the plaintiff's claims required the court to revisit these orders shows how his claims are inextricably intertwined with the state court's orders. The plaintiff cannot avoid Rooker-Feldman by alleging that the orders were the result of fraud. The Seventh Circuit affirmed the dismissal of the plaintiff's prior case on Rooker-Feldman grounds, finding that he was a party to the settlement agreement read into the record in December of 2016. Hutchinson, 2022 WL 819517, at *2. The Seventh Circuit acknowledged that the plaintiff was trying to claim that he owned an asset independent of a state court judgment because the defendants had "allegedly tricked the state court into adopting the order" confirming that all books and records had been acquired. Id. The Seventh Circuit pointed out that the plaintiff's alleged injury arose precisely from that order. The appellate court explained that the harm comes from the allegedly erroneous state court judgment and the remedy for that harm lies in a state court appeal rather than in the federal district court. Id. The same reasoning applies here.

The second step of the Rooker-Feldman analysis requires that the court be satisfied that the plaintiff had an opportunity to raise the issues he raised in

37

federal court in the state proceedings. That is clearly established by the record. The plaintiff was represented by counsel. The plaintiff agreed to release the defendant and the defendant was discharged by court order. As Judge Joseph pointed out, "this is not a situation where a non-party to the underlying state court action was denied an opportunity to litigate his claim in state court. [The plaintiff] himself was an active participant in the state court receivership action and its subsequent state court appeal and cannot now hide behind MAI to escape the *Rooker-Feldman* bar." Hutchinson, 2021 WL 3487125, at *2.

Because the plaintiff's federal claims are inextricably intertwined with the state-court's orders and judgment and because the plaintiff had an opportunity (perhaps more than one) to raise in state court the issues he raises here, this court does not have subject-matter jurisdiction under the Rooker-Feldman doctrine because ruling for the plaintiff would require the court to invalidate the state court orders. See Bauer v. Koester, 951 F.3d 863, 866 (7th Cir. 2020) ("the Bauers' claims are barred by *Rooker-Feldman* because they 'ultimately require us to evaluate the state court judgments.'").[3] The court granted the defendant's motion to dismiss.

## V. The Defendant's Motion for Sanctions (Dkt. No. 34)

### A. The Defendant's Brief (Dkt. No. 35)

On December 19, 2022, the defendant filed a twenty-five-page motion requesting sanctions under Rule 11. Dkt. No. 35 at 2. The motion resembles

---

[3] Because the court lacks subject-matter jurisdiction, it will not rule on the defendant's collateral estoppel/issue preclusion argument.

38

the same motion granted by Judge Joseph. <u>Hutchinson</u>, Case No. 20-cv-1264, Dkt. No. 92. The defendant points out that the plaintiff has been sanctioned "no fewer than five times in state court (and recently in this district) yet he fails to stop using the same antics." Dkt. No. 35 at 1. The defendant argues that Rule 11 sanctions are warranted because of the plaintiff's "baseless, countless attempts to relitigate issues that have already been decided by the Wisconsin state court and barred by *Rooker-Feldman*," but also because the plaintiff's brief is "rife with misrepresentations." <u>Id.</u> at 17. The defendant served the plaintiff with the requisite notice of Rule 11 sanctions on November 9, 2022. <u>Id.</u>

The defendant points to the allegations in the amended complaint at paragraphs 5, 8, 10, 11, 12, 14, 39 and 55. <u>Id.</u> at 19. He also cites paragraphs 79-91, which suggest that the failure to include the SEM as an asset led to a shortfall in monies in the receivership for payment to creditors, "which cause [the defendant] to breach his duties as receiver." <u>Id.</u> However, the defendant argues that the documents from the state court records establish that the defendant stated in the Motion to Sell that the buyer was willing to assume the lease from M2 (for the SEM), that the court gave the defendant the authority to deliver lease assignments, that the court approved the sale of assets that included the transfer of the lease of the SEM, and that the court released the defendant from any further liability. <u>Id.</u> at 20. The defendant asks for a monetary sanction of attorney's fees, costs and expenses for defending against yet another "frivolous lawsuit" and an order barring the plaintiff from filing anything against the defendant related to the underlying receivership action

39

and until all the sanctions are paid. Id. at 24 (the 2021 sanction imposed by Judge Joseph amounted to over $70,000).

B.   The Plaintiff's Response (Dkt. No. 37)

The plaintiff responds that the court order excluded the leased SEM from the assets and that that order never was reversed. Dkt. No. 37 at 2. He insists that he is not suing for actions taken by the defendant as the receiver but rather as an individual who was acting under the color of law and outside of any lawful authority. Id. at 2, 4. The plaintiff accuses the defendant of being "dishonest and deceptive by omission" because the asset purchase agreement exempted all assets. Id. at 5. He asserts that the defendant never filed the asset purchase agreement with the court and that the SEM was no longer an asset after the court issued its order. Id. at 7, 8. He argues that the defendant never disclosed the $221,276 accrued value of the SEM to the receivership court and creditors and says that the defendant now has admitted that he sold the leased SEM for which he had no title. Id. at 8. As a last resort, the plaintiff argues that the defendant's motion lacks a "single item of evidentiary support" and that the defendant's Rooker-Feldman arguments are underdeveloped. Id. at 10-14.

C.   The Defendant's Reply (Dkt. No. 38)

The defendant replies that the plaintiff continues to ignore key facts about the receivership, including that the SEM was included in the sale and that the Waukesha County Circuit Court continues to retain "exclusive jurisdiction to . . . 'resolve any disputes with respect to the sale by the Receiver of the Assets.'" Dkt. No. 38 at 2 (citing Dkt. No. 15-7 at ¶9). The defendant says

40

that the plaintiff "never objected regarding the value of the SEM, or the assumption of the lease, despite receiving notice and being involved and represented by counsel throughout the entirety of the receivership action." Id. The defendant reminds the court that the plaintiff has been previously sanctioned for the same conduct. Id. at 3-4.

D.      Analysis

Rule 11 requires that an unrepresented party certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that a "pleading, written motion, or other paper" (1) "is not being presented for an improper purpose," (2) "the claims . . . are warranted by existing law" and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). A court may impose sanctions "on any attorney, law firm or party" who violates the rule. Fed. R. Civ. P. 11(c)(1).

The motion for sanctions must be brought separately from any other motion and must identify the conduct that violates Rule 11(b). Fed. R. Civ. P. 11(c)(2). The motion must be served, but the moving party may not file the motion with the court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Id. "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Id. The sanction "must be limited to what suffices to

41

deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

A litigant who is representing himself "cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." McGreal v. Vill. of Orland Park, 928 F.3d 556, 560 (7th Cir. 2019). Rule 11 utilizes "an objective standard of reasonableness" which leaves "no room for an 'empty head, pure heart' defense." N. Ill. Telecom, Inc. v. PNC Bank, N.A., 850 F.3d 880, 885 (7th Cir. 2017).

The plaintiff's complaint is objectively unreasonable, given the number of courts that have told him he cannot reopen or revisit the receivership. The plaintiff assigned the assets of the company to the receiver appointed by the state court, the state court gave the receiver authority to act, the receiver provided the state court with notice of the assignment of lease, the state court confirmed the sale and released the receiver. The plaintiff's allegations in the instant case resemble his allegations dismissed by Judge Joseph: he alleges that the defendant acted outside of his authority and concealed an asset that was exempted from the asset sale. Judge Joseph labeled these allegations a repackaging of the issues the plaintiff lost before the Waukesha County Circuit Court. The plaintiff has been advised that he cannot avoid the jurisdictional bar by alleging conspiracy or fraud. The plaintiff has been told that his remedy lies in a state appeal rather than federal court. Judge Joseph and the Seventh Circuit have told him as much. Hutchinson, 2022 WL 819517, at *2.

The court orally granted the defendant's motion for sanctions, with the hope of preventing any further attempts by the plaintiff to reopen or revisit the 2016 receivership in federal court. The court will award the defendant reasonable attorney's fees as a sanction for filing this case and extend the bar imposed by Judge Joseph to preclude all litigation filed by the plaintiff in this district until he pays the sanctions imposed by Judge Joseph and this court.

## VI. The Plaintiff's Motion to Compel a Rule 26(f) Conference (Dkt. No. 40); Defendant's Expedited Motion to Stay (Dkt. No. 43)

The plaintiff filed a motion claiming that the defendant refused to participate in a Rule 26(f) conference, which has "the effect of stalling, delaying, and denying legal process of this case." Dkt. No. 40 at 2. The defendant opposed the motion, dkt, no. 42, and filed a separate motion to stay the litigation pending the court's resolution of his motion to dismiss, dkt. no. 43. The plaintiff then filed "plaintiff's motion to compel Rule 26(f) conference reply," which the Clerk of Court docketed as a motion to compel. Dkt. No. 45. The court instructed the clerk to correct the docketing language at Dkt. No. 45 to reflect that the filing was a reply in support of the motion to compel; the clerk refiled the reply brief at Dkt. No. 52.

When a defendant *answers* the complaint this court orders the parties to confer regarding a Rule 26(f) report in anticipation of a Rule 16 scheduling conference. If a defendant files a motion to dismiss in lieu of an answer, the court does not hold a scheduling conference; it would be a waste of time to do so if the court grants the motion to dismiss. And if the court denies the motion to dismiss, the court orders the defendant to answer the complaint and

43

calendars the scheduling conference (and orders the parties to confer regarding their Rule 26(f) report) for a date after the answer is filed. The plaintiff's motion would have been premature even if the court were not granting the defendant's motion to dismiss. Because the court granted the motion to dismiss, it denied as moot the plaintiff's motion to compel a scheduling conference and the defendant's motion to stay pending a ruling on the motion to dismiss.

## VII. Conclusion

The court **DENIED** the plaintiff's Motion for Leave to File Surreply to Defendant's Reply and Additional Paper Pursuant to Civil L.R. 7. Dkt. No. 28.

The court **DENIED** the plaintiff's Civil L.R. 7(h) Expedited Non-Dispositive Motion to Extend Time to Respond to Defendant's Motion to Dismiss. Dkt. No. 31.

The court **DENIED** the plaintiff's Motion for Leave to Conduct Limited Jurisdictional Discovery Pursuant to Federal Rules of Civil Procedure rule 26(b)(1). Dkt. No. 47.

The court **DENIED AS MOOT** the plaintiff's Motion to Compel Rule 26(f) Conference. Dkt. No. 40.

The court **DENIED AS MOOT** the defendant's Civil L.R. Rule 7(h) Motion to Stay Case Pending Decision on Motion to Dismiss. Dkt. No. 43.

The court **GRANTED** the defendant's Motion to Dismiss Plaintiff's Amended Complaint and to Deny any Request for Leave to Amend. Dkt. No. 21.

The court **GRANTED** the defendant's Motion for Sanctions. Dkt. No. 34.

The court **ORDERS** that the defendant must file an affidavit or certification detailing the fees related to and associated with defending this case by the end of the day on **May 3, 2024**. If the plaintiff objects to any of the fees or costs, he may file a response in time for the court to receive it by the end of the day on **May 24, 2024**.

The court **ORDERS** that the plaintiff is **BARRED** from filing any documents or pleadings in this district relating to or arising from the chapter 128 receivership filed in Waukesha County Circuit by Old MAI and the plaintiff in 2015, or relating to or arising from any of the books, records or assets involved in that receivership or the actions of the receiver or the court in that receivership, until all sanctions imposed by courts in this district have been paid in full.

Dated in Milwaukee, Wisconsin this 17th day of April, 2024.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**